IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DIAZ,<br><br>　　　Plaintiff<br><br>　　vs.<br><br>K. SMITH, *et al.*,<br><br>　　　Defendants | CIVIL NO. 1:CV-10-1659<br><br>(Judge Caldwell) |

*M E M O R A N D U M*

I.   *Introduction*

Plaintiff, John Diaz, a former Pennsylvania inmate previously housed at SCI-Smithfield, alleges that the defendant Corrections Officers (CO) Smith and Sullivan confiscated his legal materials on three separate occasions in retaliation for his filing of prison grievances. He also claims the deprivation of the legal materials denied him access to the courts as the deprivation prevented him from pursuing postconviction claims and claims related to his prison conditions. Diaz is represented by counsel and is presently incarcerated in Massachusetts.

Before the court is Defendants' Motion to Dismiss Diaz's Fourth Amended Complaint. (Doc. 117). For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

II.     *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted). The court can consider documents attached to the complaint and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III.    *Procedural History*

The procedural history of this case is set forth in our prior opinions and need not be discussed at length. *See* Docs. 103 and 114. Briefly, following Defendants' motion to dismiss, and Diaz's motion for reconsideration, several parties and claims were dismissed on the basis of the statute of limitations. After the court resolved Defendants' motion to dismiss the second amended complaint, all that remained were Diaz's access-to-courts and retaliation claims against CO Smith and CO Sullivan. Diaz was granted leave to file a third amended complaint to perfect these claims.

At that point, Diaz obtained counsel to assist him and filed a counseled third amended complaint. We struck that complaint because it reasserted many of the previously dismissed claims. On September 29, 2015, we provided Diaz a final opportunity

to file an amended complaint limited to the following claims: "(1) CO Smith and CO Sullivan's alleged retaliatory confiscation of his legal materials on the following dates: July 9, 2008, November 1, 2008 and December 31, 2008; and (2) Diaz's access-to-courts claims based on the three times CO Smith and CO Sullivan allegedly confiscated his legal materials." (Doc. 114, ECF pp. 3-4). Diaz was cautioned that his failure to file an amended complaint would result in the action proceeding strictly on his retaliation claim. (*Id.*) On October 20, 2015, Diaz filed his Fourth Amended Complaint. (Doc. 116).

IV. *Background*

In the Fourth Amended Complaint, Diaz alleges as follows. He was in the custody of the Pennsylvania Department of Corrections (DOC) between sometime in 1998 and February 27, 2009. (Doc. 116, Fourth Am. Compl. ¶ 7 and Doc. 45, ECF p. 15). Presently incarcerated in Massachusetts, he is serving a Massachusetts sentence of life without parole after being convicted of first-degree murder. (Doc. 116, Fourth Am. Compl. ¶ 7; *see also Commonwealth v. Diaz*, 431 Mass. 822, 730 N.E.2d 845 (2000)). At all times relevant to this lawsuit, CO Smith and CO Sullivan worked at SCI-Smithfield, where Diaz was housed. (Doc. 116 ¶¶ 8-9).

On November 19, 2007, Diaz filed a grievance against CO Smith and CO Sullivan after they searched his cell. (*Id.*, ECF p. 9). Diaz alleges that in November 2007 he was "in the process of litigating" two civil-rights actions concerning various conditions-of-confinement claims and that the claims were "adversely affected by" CO Smith and CO Sullivan's conduct. (*Id.* ¶ 16). The first action was *Diaz v. Palakovich*, No. 1:07-CV-2190

-3-

(M.D. Pa.) (Caldwell, J.), filed in this district on November 25, 2007.[1] The second action was *Diaz v. McCusker*, No. 2:08-CV-1033 (E.D. Pa.), filed on February 26, 2008, in the United States District Court for the Eastern District of Pennsylvania. (Doc. 116, ¶ 16).[2]

On July 9, 2008, approximately 220 pages of mail/request slips and grievances belonging to Diaz were confiscated from the cell of inmate Walter May by CO Smith and CO Sullivan. (Doc. 116, Fourth Am. Compl., ECF p. 13). CO Smith issued a

---

[1] The court takes judicial notice of *Diaz v. Palakovich*, No. 1:07-CV-2190 (M.D. Pa.). In that action, Diaz alleged that SCI-Smithfield employees (not CO Smith or CO Sullivan) routinely interfered with his incoming and outgoing legal mail. We granted the defendants' motion for summary judgment with respect to his incoming legal mail claim, dismissed the access-to-courts claim due to his failure to allege any actual injury and denied his motion to amend as futile. *Diaz v. Palakovich*, 2009 WL 811712 (M.D. Pa. Mar. 26, 2009). Diaz appealed our decision to the Third Circuit and was appointed *pro bono* appellate counsel. *Diaz v. Palakovich*, 448 F. App'x 311 (3d Cir. 2011) (nonprecedential). The Third Circuit reversed our March 26, 2009, ruling and remanded the matter, directing that Diaz be permitted to file an amended complaint. (*Id.*) In Diaz's amended complaint he alleged that the defendants' interference with his legal mail "resulted in (4) four separate petitions for commutation of his sentence (from first degree murder, to second degree murder), being stolen, seized, or deliberately lost, by the defendants causing the commutation petitions from reaching the Massachusetts Advisory Board of Pardons; denying the Plaintiff all review on the commutation petitions, any chance of receiving a reduction in sentence and directly interfering with his U.S. mail to another state (Massachusetts) body." *Diaz v. Palakovich*, 1:07-CV-2190 (M.D. Pa.), Doc. 63, Second Am. Compl., ECF pp. 6-7. He asserted that he could not renew his commutation application because "[o]riginal affidavits, and exhibits, are gone, and witnesses are no longer available to get new affidavits, or exhibits from." (*Id.*, Doc. 92, ECF p. 4). Discovery has closed in that proceeding and the period for filing dispositive motions has passed.

[2] The court takes judicial notice of *Diaz v. McCusker*, No. 2:08-CV-1033 (E.D. Pa.). In tht action, Diaz filed an amended complaint on July 17, 2008. (Doc. 13, *Diaz v. McCusker*, No. 2:08-CV-1033 (E.D. Pa.). After the Pennsylvania Department of Corrections (DOC) defendants moved to dismiss the amended complaint, *pro bono* counsel was appointed to represent Diaz. (Docs. 28, 30 and 33). On May 16, 2011, counsel filed a Second Amended Complaint on behalf of Diaz. *Diaz v. CO Musker*, No. 2:08-CV-1033, 2012 WL 85234 (E.D. Pa. Jan. 10, 2012). In that Complaint, Diaz alleged that while housed at SCI-Graterford, he was removed from his cell without warning on February 20, 2006, and placed in the institution's Restricted Housing Unit (RHU) while his cell and property were searched. (*Id.*) Several days later, Diaz was issued a misconduct charging his with various serious misconducts related to an escape plan which included a map of the prison property. (*Id.*) He claimed his due-process rights were violated when he was denied access to an inmate handbook and access to the prison's law library to prepare his defense. Diaz was found guilty of all charges and sentenced to 360 days of disciplinary custody. (*Id.*) On January 10, 2012, the district court granted the DOC Defendants' motion to dismiss. The Third Circuit denied Diaz's appeal on October 31, 2012. *See Diaz v. Canino*, 502 F. App'x 214 (3d Cir. 2012)(nonprecedential).

confiscation slip noting the seizure and that the seized items were forwarded to the institution's security office.  (*Id.*)  After Diaz filed a grievance seeking the return of these items, Lt. Painter (a non-defendant) advised him that the property was "reviewed, and on August 6, 2008, were (sic) placed in [his] property."  (Doc. 45, ECF p. 7).

Inmate May's affidavit, attached to the Fourth Amended Complaint, affirms the following.  In late 2008, at Diaz's request, he was reviewing one of Diaz's § 1983 actions filed in the Middle District of Pennsylvania "concerning S.C.I. Smithfield staff opening and reading his legal mail outside of his presence."  (Doc. 116, ECF pp. 15-16).  On November 1, 2008, CO Smith and CO Sullivan confiscated legal materials belonging to Diaz from inmate May's cell.  (*Id.*, ECF p. 21).  Lt. Painter from the Security Office later met with Inmate May and had him "go over the legal work and confirm that it was exactly what was in his cell and [May] said yes."  (*Id.*)  Lt. Painter told May that he "would make sure that inmate Diaz got his legal work back."  (*Id.*)  May claims he "heard" that Diaz never received the papers confiscated from his cell that day and "that his filing deadline had past and he had lost his case in the U.S. Middle District Court because of it."  (*Id.*)

Diaz alleges that on December 11, 2008, he wrote to a property officer concerning the institution's failure to "receive[ ] any property from any of my past locations and that nothing has arrived.  Nearly a year ago, we both agreed that that was the issue and although I may never locate my court transcripts, family photos or personal, sentimental cards and letters . . ."  (*Id.*, ECF p. 23).  Diaz claimed that DOC officials lost "ten years of items" when he was transferred from SCI-Graterford.  (*Id.*)

On December 31, 2008, after CO Smith and CO Sullivan searched Diaz's cell Plaintiff "discovered several legal items were missing."  (*Id.* ¶ 25).  Diaz filed grievance

-5-

255898-08 concerning the missing items.³ (*Id.*; *see also* Doc. 45, ECF p. 8).  Diaz alleged a legal-sized manila envelope marked "EVIDENCE," which contained several smaller legal envelopes he received in the mail, and "two pages of notes relating to civil suit #07-2190," were missing after CO Smith and CO Sullivan searched his cell.  (*Id.*)

Plaintiff alleges that on February 26, 2009, he discovered that "none of his legal documents that were previously confiscated by Defendants were present and/or returned in his property."  (*Id.* ¶ 26a).  The Lieutenant (a non-defendant) who was present while Diaz was reviewing his property and discovered his documents were missing, noted Diaz's claims on the property inventory sheet.  (*Id.*, ECF p. 25) ("Inmate Claims 220 legal documents missing").⁴  Diaz filed a grievance alerting prison officials that his legal materials were missing.  Specifically, Diaz noted "that over two hundred legal documents of mine that Lieutenant Rodney Painter claimed that he replaced to my property, was not there.  Lieutenant Painter did not return my legal documents that were confiscated in July 2008 from inmate Walter May #DW-3424 by CO Smith."  (*Id.*, ECF p. 28).  Diaz noted that he had "two cases in federal court and [he] need[ed] those documents!"  (*Id.*)

Plaintiff alleges CO Smith and CO Sullivan retaliated against him for filing grievances and that their seizure of his legal papers resulted in the dismissal of his legal actions. (Fourth Am. Compl. ¶ 3).  He claims the "confiscated documents included some of Plaintiff's trial court transcripts, documents, drafts, and evidence that Plaintiff was including

---

³ Diaz's grievance was denied.  (Doc. 45, ECF pp. 9-14).  It was dismissed at final review due to Diaz's failure to provide the required documentation upon review.  (*Id.*, ECF p. 15).

⁴ Although Diaz asserts that this sheet shows that "Defendants acknowledged in writing that Plaintiff's legal documents were missing," the sheet only shows that the Lieutenant noted on the sheet that "Inmate Claims 220 legal Documents are missing."  *See Id.*, ECF p. 25.

in an attempt at post-conviction relief from his sentence.  Defendants' confiscation of, and failure to return, the documents described [ ] has prevented Plaintiff's attempted (sic) at post-conviction relief."  (*Id.* ¶¶ 32-33; ¶ 39 and ¶ 43).  Diaz claims he incurred "out-of-pocket expenses since Plaintiff has to pay for the cost of replacing the legal papers seized by Defendants."  (*Id.* ¶ 36b).  He seeks in excess of over $10,000 from each Defendant.  (*Id.* ¶ 5).

V.   *Discussion*

  A.   *Diaz's Access-to-Courts Claims*

Diaz claims the loss of his Massachusetts criminal case transcripts, legal envelopes, draft pleadings, case notes, other unspecified "evidence" and 220 pages of legal documents "denied [him] access to the Courts to litigate his criminal post-conviction claims, and/or claims related to unconstitutional prison conditions."  (Doc. 116, ¶¶ 4(c), 16, 33, 39 and 43).  He also claims the two civil-rights actions described above were "adversely affected" due to the lack of his legal documents.  These claims are based on the seizure of his legal materials by CO Smith and CO Sullivan from inmate May's cell on July 9, 2008 and November 1, 2007, and from Diaz's cell on December 31, 2008.

The right of access to the courts is generally afforded by the First, Fifth, and Fourteenth Amendments, the Due Process Clause, and the Equal Protection Clause.  *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12,  122 S.Ct. 2179, 2186 n.12, 153 L.Ed.2d 413 (2002) (collecting cases that demonstrate the "unsettled . . . basis of the constitutional right of access to courts").  When prisoners claim that they lost the opportunity to present past legal claims due to the defendants' action, the Third Circuit has stated that prisoners:

> must show (1) that they suffered an "actual injury" — that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *See Christopher v. Harbury,* 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." *See id.* at 416–17, 122 S.Ct. 2179.

*Monroe v. Beard,* 536 F.3d 198, 205-06 (3d Cir. 2008)(footnote omitted). The Court of Appeals added that the underlying claims must be pled "in a manner that satisfies Fed. R. Civ. P. 8(a)," *id.* at 206 n.8 (citing *Harbury*, 536 U.S. at 417-18, 122 S.Ct. at 2188), meaning that an inmate must present a short and plain statement of each claim said to have been lost by a defendant's conduct. The inmate must also plead facts showing how his claims "may no longer be pursued as a result of defendant's actions." *Id.*, 536 F.3 at 206 n.9.

An "actual injury" does not occur without a showing that a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented. *Lewis v. Casey,* 518 U.S. 343, 354-56, 116 S.Ct. 2174, 2181-82, 135 L.Ed.2d 606 (1996). Here, the allegations of the counseled Fourth Amended Complaint fail to state with the necessary specificity the facts regarding Diaz's "lost" claims. First, with respect to *Diaz v. Palakovich*, No. 1:CV-07-2190 (M.D. Pa.), the current active status of this case cannot be disputed. Clearly, the underlying claims in that action have not been lost. Next, with respect to *Diaz v. McCusker*, 2:08-CV-1033 (E.D. Pa.), Diaz proceeded with the assistance of counsel in that case. The case was not lost because of a missed filing deadline or the absence of evidence on summary judgment. Rather, "[t]he District Court determined Diaz failed to state a claim for which relief could be granted because Diaz had no liberty interest in

-8-

avoiding 360 days of confinement in RHU and did not allege sufficient personal involvement on the part of Canino to hold her liable for alleged liberty deprivations occurring after the completion of his disciplinary sentence."  *See Diaz v. Canino*, 502 F. App'x 214, 215 (3d Cir. 2012).  The Third Circuit affirmed the district court's decision in that matter.  Thus, Diaz offers no facts in his Fourth Amended Complaint to support his conclusory allegation that either of his civil-rights cases were "adversely affected" by the defendants' actions.

Next we turn to Diaz's claim that Defendants' actions of confiscating and failing to return his legal papers "prevented Plaintiff's attempted (sic) at post-conviction relief."  (Doc. 116 ¶ 33).  Accepting Diaz's allegations as true, as we must, Diaz fails to articulate his post-conviction claims or demonstrate that they are nonfrivolous or arguable.  He also fails to demonstrate how the lack of any of his legal papers (including his criminal trial transcript)[5] hampered his ability to collaterally attack his conviction and sentence.  Diaz has not adequately pled his access claim related to his "post-conviction remedies" in his Massachusetts criminal case.  Based on the allegations of the Fourth Amended Complaint, we cannot discern whether Diaz's unspecified post-conviction claim is arguable or whether it is frivolous or merely hopeful.

If Diaz is alluding to his efforts to file a commutation petition, any such access claim would fail as the "arguable" nature of the underlying claim would be premised on no more than a mere hope of relief.  Diaz was convicted of first-degree murder after he walked

---

[5] Documents attached to the Fourth Amended Complaint and Plaintiff's allegations in *Diaz v. Palakovich*, 1:07-CV-2190 (M.D. Pa.) suggest that Diaz's criminal transcripts were lost either when he was transported from SCI-Graterford to SCI-Smithfield or were lost when he attempted to submit his application for pardon, events that pre-date CO Smith or CO Sullivan's alleged confiscations.

up to his "victim, pulled out a handgun that he previously had loaded with Black Talon ammunition, and shot the victim in the face." *Commonwealth v. Diaz*, 431 Mass. 822, 730 N.E.2d 845, 853 (2000)). Pardon or commutation of a sentence in light of the facts surrounding Diaz's conviction, while desired, is hopeful at best. Given these deficiencies, Diaz's access-to-courts claims will be dismissed.

      B.      *Retaliation*

Retaliation for expressive activities, such as filing institutional grievances, can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224 – 25 (3d Cir. 2000); *Milhouse v. Carlson*, 652 F.2d 371, 373 – 74 (3d Cir. 1981). To prevail on a retaliation claim, a plaintiff must show that "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). An adverse action is conduct that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* (internal quotation marks and quoted case omitted).

In his Fourth Amended Complaint, Diaz alleges that CO Smith and CO Sullivan confiscated legal materials from his cell on one occasion and from the cell of inmate May on two occasions in retaliation for exercising free-speech rights to file grievances, lawsuits, and complaints about the DOC. The Fourth Amended Complaint alleges that the retaliation followed Plaintiff's filing of a grievance, which is protected

conduct.  *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  Accordingly, this claim survives Defendants' motion to dismiss.

        C.      *Monetary Reimbursement to Replace Lost Legal Property*

        To the extent Diaz seeks to claim he was denied due process with regard to the deprivation of his legal materials, this claim is meritless.  The Supreme Court of the United States has held that neither negligent nor intentional deprivations of property violate the Due Process Clause if there is a meaningful post-deprivation remedy for the loss.  *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 530, 101 S.Ct. 1908, 1910, 68 L.Ed.2d 420 (1981).  The Third Circuit has "held that the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process."  *Barr v. Knauer*, 321 F. App'x. 101, 103 (3d Cir. 2009) (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)).  If dissatisfied with the outcome of the administrative grievance process, Diaz may avail himself of an alternative post-deprivation remedy, a state court tort action. *See Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2010); *see also* Pa. Cons. Stat. Ann. § 85522(a) and (b)(3) (common-law action for conversion).   Accordingly, the existence of a post-deprivation remedy forecloses any due process claim, even if Diaz is dissatisfied with the result of the process.  *See Ball v. Oden*, 425 F. App'x. 88, 89 (3d Cir. 2011)(nonprecedential)(affirming dismissal of inmate deprivation of property claim on ground that administrative grievance procedure or state tort action provided adequate post-deprivation remedy).

VI.     *Conclusion*

For the reasons set forth above, Diaz's access-to-courts and Due Process claims against defendants' Smith and Sullivan will be dismissed for failure to state a claim upon which relief may be granted.  The sole remaining claim in this action is the retaliation claim against Smith and Sullivan for confiscating his legal papers from inmate May's cell on July 9, 2008, November 1, 2008, and his own cell on December 31, 2008.

An appropriate order follows.

> /s/ William W. Caldwell
> William W. Caldwell
> United States District Judge

Date: May 4, 2016